IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARIO GONZALEZ and RENEE GONZALEZ, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | No. 3:05-CV-1737-M |
| CITY PLAN COMMISSION, CITY OF DALLAS, TEXAS, and MAGEN DAVID CONGREGATION, | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment. For the reasons set forth below, the Motion is **GRANTED IN PART** as to all of Plaintiffs' federal claims. Plaintiffs' state takings claims are **REMANDED** to the 298th Judicial District Court of Dallas County, Texas. The Court additionally notes that Plaintiffs' Brief in Support of their Response to Defendants' Motion for Summary Judgment does not comply with the Local Rules, which require that a responsive brief accompanied by an appendix contain citations to each page of the appendix that supports the assertions made concerning the evidence. *See* N.D. TEX. CIV. R. 7.2(d), 56.5(c). Plaintiffs' virtually incomprehensible submission makes scarce reference to the attached appendix.

### BACKGROUND

Plaintiffs and Defendant Magen David Congregation ("Congregation") own property in Planned Development Number 106, a zoning district that in part encompasses the land west of Hillcrest Road between Starbuck Drive and Crestland Avenue, in Dallas, Texas. Prior to January

12, 2005, the Congregation's property—which contained only a single-family residence—was separated from Hillcrest Road by two parcels of land: a right-of-way that abutted its property, and surplus land that abutted the right-of-way.[1] On January 12, 2005, the Congregation purchased both parcels from the City of Dallas ("City"). Ordinance Number 25851 effected the abandonment and sale of the right-of-way, and Resolution Number 05-0194 effected the sale of the surplus land. The terms of both conveyances required the Congregation to replat the newly acquired parcels with its existing property, into one plat. After notice and a public hearing regarding the proposed replat, the City Plan Commission ("Commission") approved the Congregation's second replat application.[2] Plaintiff Mario Gonzalez attended the hearing and opposed the Congregation's request. The Congregation's property continues to contain only a single-family residence. Plaintiffs subsequently filed suit in state court, alleging numerous constitutional infirmities in the conveyances and replat approval, under 42 U.S.C. § 1983 and the Takings Clauses of the United States and Texas Constitutions. Defendants removed the action to this Court and moved for summary judgment against Plaintiffs' claims.

## STANDARD OF REVIEW

Summary judgment is warranted when the facts as reflected in the pleadings, affidavits, and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477

---

[1] The "surplus" land was apparently created as a leftover parcel of land following the City of Dallas' adjustment of the route of the right of way adjacent to it. Additionally, the Court's labeling of the Congregation as an "abutting landowner" to the abandoned right-of-way and the surplus land is in reference to the layout of the property as described here.

[2] The Congregation's first application was apparently denied without prejudice.

U.S. 317, 323–25 (1986).  "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."  *Lynch Props., Inc. v. Potomac Ins.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322–25).  Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate.  *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

      The nonmovant is then required to go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  That party may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts.  FED. R. CIV. P. 56(e).  The court must review all evidence in the record, giving credence to evidence favoring the nonmovant as well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses," and disregarding evidence favorable to the movant that the jury would not be required to believe.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000).  Further, "the court must draw all justifiable inferences in favor of the nonmovant."  *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005) (citing *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993)).

      In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists."  *Lynch*, 140 F.3d at 625.  "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine

issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991). However, in the absence of proof, a court will not conclude that the nonmoving party could prove the required facts. *Lynch*, 140 F.3d at 625. Further, the party opposing summary judgment must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

## SECTION 1983 CLAIMS

The majority of Plaintiffs' claims are based upon 42 U.S.C. § 1983.[3] There is no dispute that the Commission is a board of the City, and thus that both the Commission and the City are municipal entities for the purposes of liability under § 1983. Municipal liability under § 1983 requires proof of three elements: (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). These so-called attribution principles ensure that, in subjecting a municipality to liability, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski*, 237 F.3d at 578. Municipal liability under a theory of *respondeat superior* is accordingly prohibited. *Monell*, 436 U.S. at 691. Defendants assert that Plaintiffs' claims fail each of the *Monell* attribution principles. The Court

---

[3] Section 1983 of Title 42 of the United States Code provides as follows:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

assumes without deciding that Plaintiffs can establish the three attribution principles and addresses the merits of Plaintiffs' § 1983 claims.

*A. Fourth Amendment*

Plaintiffs claim that Defendants effected an unreasonable seizure of their property in violation of the Fourth Amendment, by selling the abandoned right-of-way and the surplus land to the Congregation, and by approving the Congregation's application to replat its property. The Fourth Amendment provides, in relevant part, that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. A seizure of property occurs "when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Lovell*, 849 F.2d 910, 915 (5th Cir. 1988) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Defendants move for summary judgment against Plaintiffs' Fourth Amendment claim, arguing that no unreasonable seizure occurred. In support, Defendants argue that no law supports Plaintiffs' apparent position that the sale and replatting of nearby property can constitute an unreasonable seizure of Plaintiffs' property. The Court agrees. Seizures are frequently found when a complainant's physical property is either actually taken or damaged by state action. *See, e.g.*, *Pepper v. Village of Oak Park*, 430 F.3d 805, 809 (7th Cir. 2005). Here, by contrast, Plaintiffs had no possessory interest in the property that was sold to the Congregation, and have failed to demonstrate, in response to Defendants' contentions, that any economic injury to their property resulted, or that such injury would be unreasonable in light of state and local law that allows the challenged actions. The Court thus **GRANTS** summary judgment as to Plaintiffs' § 1983 claim based on the Fourth Amendment.

*B. Equal Protection*

Plaintiffs aver that the Commission discriminated against them on the basis of their race, alienage, and national origin, in violation of the Equal Protection Clause of the Fourteenth Amendment, and thus that Defendants are liable under § 1983.  *See* U.S. CONST. amend. XIV, § 1.  To state a valid equal protection claim, a plaintiff must prove that "purposeful discrimination" motivated the government action at issue.  *Johnson v. Rodriguez*, 110 F.3d 299, 306–07 (5th Cir. 1997).  "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group."  *Id.* at 307 (quoting *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995)).  The Supreme Court has enumerated the following factors to be considered in assessing the motivations underlying a facially neutral enactment or policy challenged as discriminatory: (1) "a clear pattern [of discriminatory effect], unexplainable on grounds other than race"; (2) "[t]he historical background of the decision . . . , particularly if it reveals a series of official actions taken for invidious purposes"; (3) "[t]he specific sequence of events leading up to the challenged decision"; (4) substantive and procedural departures from the norm; and (5) the "legislative or administrative history" of the action.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977).

In moving for summary judgment against Plaintiffs' equal protection claim, Defendants claim that no evidence supports a finding of intentional discrimination.  Plaintiffs respond by

addressing the *Arlington* factors.[4]  Plaintiffs state that the first factor—discriminatory effect unexplainable on other grounds—favors the claim of invidious discrimination because the Congregation is "an all-white Congregation of which [Plaintiffs] are lifetime non-members," and because the desire of the neighborhood's predominantly "white citizens . . . for the Congregation to freely build and reside on community property was honored by the ordinance at the expense of [Plaintiffs]."  Further, Plaintiffs claim that the sale and replatting of the property at issue were conducted in such a way as to exclude Plaintiffs.  Plaintiffs do not adduce any evidence to substantiate these claims regarding the composition of the neighborhood, the composition of the Congregation, and the desires of the neighborhood's white citizens.  Though the Court must draw all reasonable inferences in favor of Plaintiffs, as non-movants, Plaintiffs cannot discharge their burden on summary judgment by responding to Defendants' supported claims with unsubstantiated and conclusory assertions.  *Matsushita*, 475 U.S. at 587; FED. R. CIV. P. 56(e).  Plaintiffs' claims regarding the first *Arlington* factor are accordingly disregarded as mere assertions.  Therefore, no evidence supports finding a clear pattern of discriminatory effect.

The second and fifth *Arlington* factors require consideration of the legislative, administrative, and historical background of the decision at issue.  Plaintiffs state that the second and fifth factors weigh in favor of finding invidious motive because "the legislative, administrative and historical background of the [Commission's] special decision in the Congregation's case suggests that its final actions are unappealable to any City authority external to the [Commission], and that, for this reason, at the time it made its decision as to the

---

[4] In addition to addressing the *Arlington* factors, Plaintiffs contend that—protected classes aside—Defendants are liable for violation of the Equal Protection Clause by treating Plaintiffs differently than others similarly situated, without rational basis.  No evidence supports this notion; as discussed below, the City's and Commission's actions were supported by a rational basis.

Congregation sale, it had little or no expectation of being overruled or challenged by a lone Latino occupant." Plaintiffs essentially invite the Court to consider the fact that the Commission's authority on platting is final as indicative of the Commission's intent to discriminate against Plaintiffs. Absent evidence of any kind to this effect, the Court declines to so infer.

The third *Arlington* factor focuses on the specific sequence of events preceding the challenged decision. Plaintiffs state that the sequence "suggests that the sale and subsequent replatting were approved with the knowledge that [they] would have a disproportionate [and] detrimental impact on [Plaintiffs,] and represented a hostile act by the [Commission] on behalf of the white community." This assertion is unsupported by any evidence, and the sequence of events suggests otherwise: The Commission held a hearing regarding the replat application, heard objections from a number of residents, including Plaintiffs, and ultimately approved the Congregation's application.

The fourth *Arlington* factor addresses any substantive or procedural departures from the norm in the challenged enactment or policy. Plaintiffs allege numerous procedural irregularities in the approval of the Congregation's platting application. The Court determines that the evidence only supports a single irregularity, namely the City's and Commission's postponement of certain conditions of the sale and replat approval. As detailed below, the City and the Commission postponed enforcement of the conditions because the Congregation had not redeveloped its newly-replatted property, and thus compliance with the conditions of the sale and replat was not necessary for the Congregation to be in abidance with various City codes. No evidence suggests otherwise, and more importantly, no evidence suggests that the

postponement—which Defendants maintain will cease once the Congregation redevelops its property—was given to discriminate against Plaintiffs.

In short, there is simply no evidence that Defendants' actions—selling two narrow strips of land to the abutting landowner and approving the replatting of that landowner's property consistently with state and local law, with one minor and rationally-explained deviation—were tainted by discriminatory purpose against Plaintiffs. Summary judgment is accordingly **GRANTED** against Plaintiffs' claim of discrimination in violation of the Equal Protection Clause.

### C. Due Process

Plaintiffs claim that Defendants are liable under § 1983 for violation of the Due Process Clause of the Fourteenth Amendment. *See* U.S. CONST. amend. XIV, § 1. Specifically, Plaintiffs argue that their rights to procedural and substantive due process were violated by deficiencies in the City's sale of the surplus land and the abandoned right-of-way to the Congregation, and the Commission's approval of the Congregation's replat application. The principal element of a claim alleging denial of due process by means of the deprivation of a property right is the existence of a constitutionally protected property right. *Bryan v. City of Madison*, 213 F.3d 267, 274–75 (5th Cir. 2000). Such property rights are established by state law. *Id.*

1. Sale of the Surplus Land

With respect to the alleged deficiency in the City's sale of the surplus land to the Congregation, the Court finds that Plaintiffs have no cognizable property interest upon which to found either a procedural or substantive due process claim. The sale of properties by

municipalities in Texas is governed by section 272.001 of the Texas Local Government Code, which requires public notice and bidding for the sale of certain land. TEX. LOC. GOV'T CODE ANN. 272.001(a). Certain properties are exempt from these requirements, however, including "narrow strips of land, or land that because of its shape, lack of access to public roads, or small area cannot be used independently under its current zoning or under applicable subdivision or other development control ordinances." TEX. LOC. GOV'T CODE ANN. 272.001(b)(1). The land described by section 272.001(b)(1) may not be sold for less than its fair market value "unless the conveyance, sale, or exchange is with one or more abutting property owners who own the underlying fee simple." TEX. LOC. GOV'T CODE ANN. 272.001(b). Thus, certain property may be sold without notice and an opportunity to bid, and that same property may be sold for less than fair market value when sold to an abutting landowner.

Here, the City sold two parcels of land to the Congregation on January 12, 2005. Ordinance 25851 effected the sale of the abandoned right-of-way to the Congregation, which abutted the Congregation's land, and was located between the Congregation's land and the surplus land. Resolution 05-0194 effected the sale of the surplus land to the Congregation. The Resolution noted that the surplus land "is a narrow strip of land, that because of its shape, lack of access to public roads, and small area, cannot be used independently under its current zoning or under applicable subdivision or other development control ordinances, and may be sold without public bid to the abutting owners." Further, the Resolution noted that the land's abutting property owner, the Congregation, proposed to purchase the land for its fair market value as established by an independent appraisal. As the surplus land was determined by the City to be a narrow strip, unsuitable for independent use, and as it was sold to an abutting property owner,

Plaintiffs had no property interest in the land or notice of its sale. *See Soncy Rd. Prop., Ltd. v. Chapman*, 259 F. Supp. 2d 522, 529 (N.D. Tex. 2003) (Robinson, J.) (finding plaintiff's interest in property that was sold to an abutting landowner to be "mere expectancy"). Plaintiffs appear to challenge the City's determination that the surplus land abutted the Congregation's property. The Court is unconvinced. The surplus land abutted the abandoned right-of-way which the City sold to the Congregation on the same day. In any case, whether or not the surplus land abutted the Congregation's property is irrelevant, as the property was exempt from the notice and bidding requirements of section 272.001(a), because it "is a narrow strip of land, that because of its shape, lack of access to public roads, and small area, cannot be used independently under its current zoning or under applicable subdivision or other development control ordinances." *See* TEX. LOC. GOV'T CODE ANN. 272.001(b)(1). Plaintiffs' due process claims relative to the sale of the surplus land therefore fail.

    2. Conditions of the Sale and Replat

The Court likewise finds no cognizable property interest of Plaintiffs affected by Defendants' decision to postpone application of certain conditions of the sale of the abandoned right-of-way and of the replat approval. Ordinance 25851 conveyed the abandoned right-of-way to the Congregation, and section 10 of the Ordinance imposed conditions upon the Congregation as consideration for the conveyance. The replat approval appears to require the Congregation to change the access point to its property to be from Hillcrest Road. Defendants maintain that Plaintiffs have no property interest in the City's enforcement of third-party obligations to the City. Plaintiffs argue that the City's failure to enforce the conditions is of constitutional significance but do not identify their property interest in such enforcement. As a general matter,

the Due Process Clause places no affirmative obligation on the government to act to the benefit of its citizens. *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Absent an exception to this general rule, Plaintiffs have no property interest in the City's enforcement of the Congregation's obligations. Plaintiffs offer no exception. Even assuming Plaintiffs have a property interest, the City's decision to postpone its enforcement was not arbitrary or conscience-shocking. *See Breen v. Tex. A&M Univ.*, 485 F.3d 325, 333 (5th Cir. 2007) (executive action denies substantive due process only when it is arbitrary or conscience-shocking). The City determined that the conditions need not be met for the property to satisfy City codes until the Congregation redevelops its property to contain something other than a single-family residence. Plaintiffs do not challenge the City's explanation, and it is plainly not arbitrary. Plaintiffs' due process claims relative to the sale of the abandoned right-of-way therefore fail.

      3. The Replat Application

Plaintiffs allege that the Commission's approval of the Congregation's replat application violated their right to substantive due process. "We have long insisted that review of municipal zoning is within the domain of the states, the business of their own legislatures, agencies, and judiciaries, and should seldom be the concern of federal courts." *Shelton v. City of Coll. Station*, 780 F.2d 475, 477 (5th Cir. 1986); *accord FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 173–75 (5th Cir. 1996). Accordingly, substantive due process requires only that the challenged action be rationally related to a legitimate government interest. *FM Props.*, 93 F.3d at 174. "If the question is at least debatable, there is no substantive due process violation." *Id.* at 175. After the City sold the abandoned right-of-way and the surplus land to the Congregation,

the Congregation sought to replat its property into one plat.  The Commission approved.  Plaintiffs complain that approval was improper because the new plat does not conform to section 51A-8.503(a) of the Dallas Development Code.[5]  Plaintiffs voiced this concern at the public hearing held by the Commission to debate the replat application.  The Commission heard Plaintiffs' objections and was unconvinced that the replat failed to comply with section 51A-8.503(a).  Having reviewed the transcript of the hearing, the Court determines that the question of compliance is at least debatable.  Generally speaking, section 51A-8.503(a) imposes restrictions on the size of platted lots, such that they comply in size with the established pattern of the zoning district in which they sit.  The Commission heard and agreed with the argument presented at the hearing that the proposed replat complied with the minimum lot size of the zoning district and with the pattern already established in the area, insofar as a review of the area revealed no particular pattern of maximum lot size.  Furthermore, the Court determines that the replat approval furthered the legitimate interest of the City in its layout.  *See J. Ringer Custom Homes, Inc. v. City of Dallas*, No. 3:95-CV-2226-G, at *9 (N.D. Tex. Aug. 4, 1996) (Fish, J.) ("The continuity and general layout of neighborhoods within the City is clearly a legitimate purpose of the City Plan Commission when reviewing replat applications.").

Plaintiffs also claim a denial of procedural due process based on an alleged lack of notice of the replat application hearing before the Commission.  The essential requirements of procedural due process are notice and an opportunity to respond.  *McDonald v. City of Corinth*,

---

[5] Section 51A-8.503 of the Dallas Development Code provides as follows:
> The area of each platted lot must comply with the minimum regulations for the zoning district in which the lot is located.  Lots must conform in width, depth and area to the pattern already established in the adjacent areas, having due regard to the character of the area, its particular suitability for development, and taking into consideration the natural topography of the ground, drainage, wastewater facilities, and the proposed layout of streets.

102 F.3d 152, 155 (5th Cir. 1996).  The Court declines to determine whether the replat approval was an administrative or legislative action, and determines that any procedural rights enjoyed by Plaintiffs with respect to the action were satisfied.  *See Jackson Court Condos., Inc. v. City of New Orleans*, 874 F.2d 1070, 1074 (5th Cir. 1989) ("it is well established that once an action is characterized as legislative, procedural due process requirements do not apply").  A review of the replat application hearing transcript reveals that Mr. Gonzalez was present, that he presented his objections several times at length, that the Commission questioned him regarding his concerns, and that the Congregation's representative responded to those concerns when asked to do so by the Commission.  Plaintiffs do not aver that they received insufficient notice or that Ms. Gonzalez was unaware of, or prevented from participating in, the hearing.  Assuming Plaintiffs were entitled to notice of the hearing and an opportunity to be heard, the uncontested facts confirm that the notice and opportunity to be heard afforded were sufficient.  *See Schafer v. City of New Orleans*, 743 F.2d 1086, 1089 (5th Cir. 1984).

Summary judgment is **GRANTED** against Plaintiffs' § 1983 claims predicated on the Due Process Clause.

## FEDERAL TAKINGS CLAIMS

Plaintiffs allege that the actions of the City and the Commission—in selling land to the Congregation and in approving the Congregation's replat application—amount to takings under the Takings Clauses of the United States and Texas Constitutions.  Generally, a federal takings claim is not ripe until a plaintiff has sought just compensation through state procedures, unless those procedures are unavailable or inadequate.  *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 385 (5th Cir. 2001).  An exception to this ripeness requirement exists when the federal

claim asserts that the taking occurred for a private purpose. *Samaad v. City of Dallas*, 940 F.2d 925, 936 (5th Cir. 1991); *John Corp. v. City of Houston*, 214 F.3d 573, 580 n.12 (5th Cir. 2000). Plaintiffs allege in the live complaint that "[a] private taking, as here, requires no ripening analysis." Defendants concur that the actions of the City and the Commission at issue were for a private purpose. The Court finds that the federal takings claim is therefore ripe for consideration, as it alleges a taking for a private purpose.

The Takings Clause of the Fifth Amendment prohibits the taking of private property for public use, without just compensation. U.S. CONST. amend. V; *see also Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226 (1897) (incorporating the Takings Clause against the States through the Fourteenth Amendment). As Plaintiffs do not allege a permanent physical invasion or a total regulatory taking of their property, the question of whether a taking occurred turns upon the standards set forth in *Penn Central Transportation Company v. City of New York*, 438 U.S. 104 (1978), and its progeny. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538–39 (2005). The Supreme Court in *Penn Central* recognized that the inquiry is "essentially ad hoc," but identified "several factors that have particular significance." *Penn Central*, 438 U.S. at 124; *accord Lingle*, 544 U.S. at 538–39 (the factors aim to identify those regulatory actions that "are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain."). The factors include "the economic impact of the regulation on the claimant," "the extent to which the regulation has interfered with distinct investment-backed expectations," and "the character of the governmental action." *Penn Central*, 438 U.S. at 124. Finally, "the *Penn Central* inquiry turns in large part, albeit not exclusively, upon the

magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests." *Lingle*, 544 U.S. at 538.

Plaintiffs argue that the City's sale of the abandoned right-of-way and the surplus land, as well as the Commission's approval of the Congregation's replat application, effected a regulatory taking by diminishing the property value of Plaintiffs' nearby lot. For support, Plaintiffs rely upon an appraisal performed to determine the impact that using the Congregation's property as a synagogue would have on Plaintiffs' property's value.[6] The report suggests that the property value would diminish by fifteen to twenty-five percent on account of increased automobile and foot traffic. As an initial matter, the Court is unpersuaded of the alleged connection between the challenged regulatory action and the development of a synagogue on the Congregation's property. The permitted uses of the parties' properties are delineated in section 51-4.102(a)(2) of the Dallas Development Code, and include singly-family residences, churches, public, denominational, and private schools, and public parks. Therefore, the Congregation could establish a synagogue irrespective of the challenged actions. Furthermore, Plaintiffs cite no evidence indicating that the Congregation actually intends to establish a synagogue. Accordingly, the economic impact of the challenged actions on Plaintiffs' nearby property is at most speculative and marginal.

The second *Penn Central* factor also weighs against the finding of a taking. An investment-backed expectation "must be more than a 'unilateral expectation or an abstract need.'" *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005–06 (1984) (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161 (1980)). It must be objectively reasonable.

---

[6] There is no evidence cited by Plaintiffs supporting any other form of economic impact from the challenged actions.

*Cienaga Gardens v. United States*, 331 F.3d 1319, 1345–46 (Fed. Cir. 2003).  Defendants argue that it would be objectively unreasonable for Plaintiffs to expect the City not to sell its land or the Commission not to approve replats, given the clear statutory authority for such action.  The Supreme Court has admonished, however, that notice of a land-use regulation prior to the purchase of potentially affected property does not *per se* defeat a takings claim: "The [City] may not put so potent a Hobbesian stick into the Lockean bundle."  *Palazzolo v. Rhode Island*, 533 U.S. 606, 626–27 (2001).  A complainant may assert "that a particular exercise of the [government's] regulatory power is so unreasonable or onerous as to compel compensation.  Just as a prospective enactment, such as a new zoning ordinance, can limit the value of land without effecting a taking because it can be understood as reasonable by all concerned, other enactments are unreasonable and do not become less so through passage of time or title." *Id.* at 627.  The challenged actions here are not so unreasonable as to preclude adoption of Defendants' reasoning.  Employing constitutionally sufficient procedure, the City sold abandoned and surplus property to an abutting landowner, and the Commission approved the owner's application to replat the property as one unit.  Plaintiffs' approach would make Defendants' reliance upon City codes to achieve even a modicum of neighborhood development inordinately difficult, and are accordingly unreasonable.  Plaintiffs invite the Court to conduct "an objective, but fact-specific inquiry into what, under all the circumstances," Plaintiffs should have anticipated, to properly adjudge the reasonableness of their expectations. *Cienaga Gardens*, 331 F.3d at 1346.  Whether or not this inquiry is appropriate in this case, Plaintiffs do not adduce any evidence for the Court to consider, alongside the evidence advanced by Defendants, in passing on the second *Penn Central* factor.

Consideration of the third *Penn Central* factor yields the same result as the preceding two. The challenged actions in this case are the sale of abandoned and surplus land to an abutting landowner and the replatting of the property into one plat, all under the authority of city codes. It is difficult to imagine land-use or zoning decisions with a more benign effect upon the property interests of nearby landowners than the sale and replatting of abandoned and surplus property to a third-party with abutting property.

For the reasons set forth above, the Court determines that the challenged actions did not effect a taking of Plaintiffs' property within the meaning of the Takings Clause of the Fifth Amendment. Defendants' Motion for Summary Judgment as to the federal takings claims is **GRANTED**.

## STATE TAKINGS CLAIMS

Federal jurisdiction in this action is premised on 28 U.S.C. §§ 1331, 1441. The Court has granted summary judgment as to all of Plaintiffs' federal claims, and thus it must decide whether to exercise its discretion to assume supplemental jurisdiction over the remaining state takings claims. The justification for assuming such jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992); *see also Gibbs*, 383 U.S. at 726 ("if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"). Based upon the factors set out in *Gibbs*,

and in the exercise of its discretion, the Court declines to assume supplemental jurisdiction over Plaintiffs' remaining state takings claims and **REMANDS** them to the 298th Judicial District Court of Dallas County, Texas.

## CONCLUSION

For the reasons set forth above, Defendants' Motion is **GRANTED IN PART** as to all Plaintiffs' claims except the state takings claims, which are **REMANDED** to the 298th Judicial District Court of Dallas County, Texas.

**SO ORDERED**.

June 26, 2007.

_____
**BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS**